# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Lamm v. McRaith*, 2012 IL App (1st) 112123

---

| | |
|---|---|
| Appellate Court Caption | CRAIG B. LAMM, Plaintiff-Appellant, v. MICHAEL T. McRAITH, Not Individually, But as Director of the Division of Insurance of the Department of Financial and Professional Regulation, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-2123 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | September 7, 2012<br><br>October 10, 2012<br>October 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The revocation of plaintiff's Illinois insurance producer's license was reversed, since plaintiff's right to due process was violated when he was denied an administrative hearing on remand at which plaintiff could appear, and the cause was remanded to allow the Department of Financial and Professional Regulation to conduct an additional hearing with directions to impose a sanction less than revocation if a violation of the Insurance Code is found |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-25676; the Hon. Lee Preston, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Alvin R. Becker and Katherine A. Grosh, both of Beermann Pritikin Mirabelli Swerdlove, of Chicago, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Justices Gordon and Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Craig B. Lamm appeals from an order of the circuit court denying his amended complaint for administrative review and affirming the decision entered on remand by the Director of the Division of Insurance (Director) of the Department of Financial and Professional Regulation (Department) to revoke plaintiff's Illinois insurance producer's license. Plaintiff contends that the court erred in affirming the Director's decision because plaintiff's right to due process was violated when the Director revoked his license without a hearing on remand. We reverse and remand.

¶ 2    Plaintiff was licensed as an insurance producer in 1977. In 1981, he founded Magnum Insurance Agency (Magnum). On November 20, 2007, plaintiff pled guilty to filing a false individual federal income tax return for the calendar year 1999 by underreporting his taxable income in the amount of at least $76,020. Pursuant to the plea, plaintiff was sentenced to 30 days' imprisonment and 3 years of probation and ordered to pay a fine of $30,100. On February 26, 2008, the United States District Court amended the judgment against plaintiff to conform his sentence to the requirement of law that plaintiff be placed on supervised release following his incarceration. This amended judgment noted that plaintiff's criminal conduct "ended" on October 18, 2000.

¶ 3    In the meantime, on December 11, 2007, plaintiff tendered to his attorney a signed application for renewal of his insurance producer's license. In the application, plaintiff disclosed his felony conviction for filing a false tax return. On January 16, 2008, pursuant to section 500-95 of the Illinois Insurance Code (Code) (215 ILCS 5/500-95 (West 2006)), plaintiff's attorney sent a letter to the Director, notifying him of plaintiff's conviction. The Director received notice of plaintiff's conviction before the district court amended the judgment on February 26, 2008.

¶ 4    On September 11, 2008, the Director entered an "Order of Revocation," revoking plaintiff's insurance producer's license pursuant to sections 500-70(a)(2) and 500-70(a)(6) of the Code (215 ILCS 5/500-70(a)(2), (a)(6) (West 2006)). The Director found that plaintiff violated section 500-95 of the Code (215 ILCS 5/500-95 (West 2006)) by failing to report

his felony conviction to the Department within 30 days of being convicted. The Director also found that plaintiff demonstrated "untrustworthiness, incompetence and financial irresponsibility" in violation of section 500-70(a)(8) of the Code (215 ILCS 5/500-70(a)(8) (West 2006)).

¶ 5    On September 29, 2008, plaintiff requested a hearing to challenge the order of revocation pursuant to section 500-70(b) of the Code (215 ILCS 5/500-70(b) (West 2006)). The Director granted plaintiff's request and a formal administrative hearing was held on February 5, 2009.

¶ 6    At the hearing, the Department presented a certified copy of the federal charge against plaintiff, alleging he had filed an individual income tax return for the calendar year 1999 and underreported his taxable income by at least $76,020. The Department also presented a certified copy of the judgment entered against plaintiff on November 20, 2007, attendant to plaintiff's plea of guilty to filing a false tax return. The Department further presented a certified copy of the amended judgment entered on February 26, 2008.

¶ 7    John Theis, an attorney, testified on behalf of plaintiff. Theis said he knew plaintiff professionally in connection with the federal tax case filed against him by the United States government. Theis said that the judgment entered on November 20, 2007, was amended because it was not an authorized disposition. As a result, on February 26, 2008, the court amended the judgment to conform with sentencing guidelines. Theis testified that February 26, 2008, was the date the judgment against plaintiff became final.

¶ 8    George San Jose testified to the positive impact plaintiff had on the Hispanic community in the Chicago area. San Jose opined that plaintiff, through Magnum, upgraded the employability of Hispanics in Chicago.

¶ 9    Plaintiff testified that the tax return that served as the basis of his guilty plea was filed in the year 2000. He said the return was done by his accountant and that he did not instruct the accountant on how to prepare the return. Plaintiff said when he was investigated by the Internal Revenue Service, he terminated the accounting firm that filed his taxes.

¶ 10    On cross-examination, plaintiff acknowledged that he had been audited before and had made accounting mistakes. He also acknowledged that Magnum had been investigated by the Department previously and fined with respect to those investigations.

¶ 11    On March 30, 2009, the administrative law judge issued a written report making findings of fact, conclusions of law and recommendations. In the report, the judge found that plaintiff violated section 500-95 of the Code (215 ILCS 5/500-95 (West 2006)) by failing to report his conviction to the Director within 30 days after the entry date of the judgment. The judge noted that plaintiff was convicted in November 2007 and did not report his conviction to the Director until January 2008. The judge also noted that although the judgment against plaintiff was amended on February 26, 2008, plaintiff did not present evidence at the hearing as to when specifically the incorrect judgment was brought to the district court's attention so as to excuse plaintiff's failure to report the initial judgment to the Director in a timely fashion. The judge also found that plaintiff, by filing a false tax return, demonstrated incompetence and financial irresponsibility in the conduct of business in violation of sections 500-70(a)(6) and 500-70(a)(8) of the Code (215 ILCS 5/500-70(a)(6), (a)(8) (West 2006)). The judge recommended that: (1) plaintiff's insurance producer's license be revoked; (2) plaintiff be

assessed a civil forfeiture in the amount of $5,000; and (3) plaintiff be assessed the cost of the proceedings.

¶ 12    The Director issued a final administrative decision on April 14, 2009. The Director adopted the findings of fact, conclusions of law and recommendations of the administrative law judge. Plaintiff filed a motion for rehearing, which the Director denied.

¶ 13    On July 27, 2009, plaintiff filed a complaint for administrative review in the circuit court, alleging that the Director's decision to revoke his license was excessive and unreasonable. Plaintiff argued that the Director ignored evidence in the record that compelled a more lenient sanction and required reversal of the revocation order. Specifically, plaintiff pointed out that his criminal conduct–the filing of a false tax return–that formed the basis of his guilty plea ended nearly nine years before the revocation order was entered and was unrelated to the conduct of his insurance business. Plaintiff claimed that he is fully rehabilitated and posed no risk to Magnum's clients or the public at large.

¶ 14    After full briefing and oral argument, the circuit court entered a written order on May 6, 2010. In the order, the court identified two specific errors of law made by the Director. The court also identified an additional issue that was unsettled by the record. First, the court found that the Director erred as a matter of law by misinterpreting section 500-70(b) of the Code (215 ILCS 5/500-70(b) (West 2006)) and by not considering the time elapsed since the end of plaintiff's criminal conduct–the filing of the tax return in 2000. The court noted that the Director considered only the time elapsed since plaintiff's 2007 conviction but not the time that had passed since the completion of plaintiff's crime as required by section 500-70(b). Second, the court found that the Director erred as a matter of law by concluding that plaintiff's personal income tax return could form the basis for revoking plaintiff's insurance producer's license. The court noted that section 500-70(a)(8) provides for revocation only where the plaintiff uses "fraudulent, coercive, or dishonest practices, or demonstrat[es] incompetence, untrustworthiness or financial irresponsibility in the *conduct of business*." (Emphasis added.) 215 ILCS 5/500-70(a)(8) (West 2006).

¶ 15    Finally, the court found that the record did not clearly establish that plaintiff violated section 500-95 of the Code by failing to timely inform the Director of his felony conviction. The court noted that it was "left with a cloudy impression of the evidence" regarding plaintiff's violation of section 500-95 where the record shows that plaintiff signed an application for the renewal of his license disclosing his felony conviction on December 11, 2007, within 30 days of the conviction, but that plaintiff's attorney did not send the application until January 16, 2008. Given this, the court found that "the question of whether [plaintiff] actually violated [s]ection 500-95 does not appear completely settled."

¶ 16    The circuit court, relying on its power to reverse and remand an agency decision and to "state the questions requiring further hearing or proceedings and to give such other instructions as may be proper" (735 ILCS 5/3-111(a)(6) (West 2006)), remanded the matter. In doing so, the court noted:

> "The question of whether to remand a case to an administrative tribunal for further hearing is a matter which lies within the discretion of the trial court. [Citation.] As the question of [plaintiff's] violation of Section 500-95 is unsettled by the record, and

because the court has identified several errors of law, the administrative decision in this case should be reversed and remanded for re-examination of the record under the correct interpretation of applicable statutes and for re-evaluation of the penalty imposed." The court then concluded:

> "[Plaintiff's] Complaint for Administrative Review is granted. [The] Director['s] *** Administrative Decision to revoke [plaintiff's] license is, hereby, reversed and this case is remanded to the Director for re-examination and re-evaluation."

¶ 17　　On remand, the administrative law judge, without conducting an administrative hearing, entered new findings of fact and conclusions of law. In a written order, the judge found that plaintiff failed to disclose his conviction to the Director in a timely fashion as required by section 500-95 of the Code and failed to present evidence of rehabilitation following his conviction. The judge concluded that either plaintiff's untimely reporting of his conviction to the Director or plaintiff's lack of rehabilitation was sufficient independent ground for the Director to revoke plaintiff's insurance producer's license. The judge recommended that: (1) plaintiff's insurance producer's license be revoked; (2) plaintiff be assessed a civil forfeiture in the amount of $5,000; and (3) plaintiff be assessed the cost of the proceedings.

¶ 18　　The Director issued a final administrative decision on September 21, 2010. The Director again adopted the findings of fact, conclusions of law and recommendations of the administrative law judge. Plaintiff filed a motion for rehearing, arguing that the revocation of his insurance producer's license without a hearing on remand amounted to a denial of his constitutional right to due process of law. Plaintiff claimed that he was entitled to notice of and an opportunity to participate in the remand proceeding against him. The Director denied the motion, finding that the circuit court's remand order did not require another hearing.

¶ 19　　Plaintiff filed an amended complaint for administrative review in the circuit court on January 14, 2011. Plaintiff raised the same due process argument he raised in his motion for rehearing. Plaintiff sought reversal of the Director's order and that the matter be remanded for another hearing before a different administrative law judge.

¶ 20　　The circuit court denied plaintiff's amended complaint and affirmed the Director's decision. In a written order, the court found that plaintiff failed to establish that he was entitled to an additional hearing on remand or that "the lack of one violate[d] his right to due process." The court noted that the remand order included instructions to reexamine the record under the correct interpretation of applicable statutes and to reevaluate the penalty imposed but did not specifically instruct the Department to conduct another hearing. The court also noted that "the task charged to [the] Director *** on remand was simply to apply the correct interpretation of the applicable statutes to the existing record." The court found that the Director had complied with that task and that the record showed: (1) plaintiff failed to give timely notice to the Director of his November 2007 felony conviction; and (2) the district court's amendment of the judgment on February 26, 2008, did not excuse plaintiff's failure to give notice sooner.

¶ 21　　Plaintiff appeals, contending that pursuant to the circuit court's May 6, 2010, remand order, he was entitled to a new administrative hearing on remand and an opportunity to appear through counsel at that hearing. Plaintiff claims that his right to due process was

violated when the Director revoked his insurance producer's license without a hearing on remand. Plaintiff also claims that the Director's decision on remand ignored the circuit court's directive to reevaluate the sanction imposed.

¶ 22　　The Department responds that the circuit court's remand order did not require a new administrative hearing and that the Director complied with the circuit court's instructions to reevaluate and reexamine the case. The Department asserts that plaintiff did not have a constitutional due process right to a new administrative hearing on remand.

¶ 23　　The Code provides that all final administrative decisions of the Department are subject to review under the Administrative Review Law (see 735 ILCS 5/3-101 *et seq.* (West 2006)). 215 ILCS 5/407 (West 2006). Pursuant to administrative review law, we review the administrative agency's decision, not the circuit court's determination. *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560 (2004). Where, as here, the issue involves a question of law, whether plaintiff's right to due process was violated, we apply a *de novo* standard of review. See *Anderson*, 348 Ill. App. 3d at 560.

¶ 24　　Before addressing plaintiff's due process argument, we first consider whether plaintiff was entitled to a new administrative hearing pursuant to the court's May 6, 2010, remand order. After carefully reviewing that order, we believe he was. In the order, the court identified two specific errors of law made by the Director and found that the record did not clearly establish that plaintiff violated section 500-95 of the Code by failing to timely inform the Director of his felony conviction. In relation to this latter issue, the court noted that it was "left with a cloudy impression of the evidence" regarding plaintiff's violation of section 500-95. In reversing and remanding the Director's decision, the court noted:

"The question of whether to remand a case to an administrative tribunal for *further hearing* is a matter which lies within the discretion of the trial court. [Citation.] As the question of [plaintiff's] violation of Section 500-95 is unsettled by the record, and because the court has identified several errors of law, the administrative decision in this case should be reversed and remanded for re-examination of the record under the correct interpretation of applicable statutes and for re-evaluation of the penalty imposed." (Emphasis added.)

Although the court did not specifically instruct the Department to conduct another hearing, we do not see how in the absence of another hearing the Department was able to clarify the "cloudy impression of the evidence" concerning plaintiff's violation of section 500-95 or to reevaluate the penalty imposed without first clearing up the cloudy impression. Accordingly, we believe the circuit court's order entitled plaintiff to a new administrative hearing on remand and that the Director erred in revoking plaintiff's insurance producer's license without an additional hearing.

¶ 25　　Even were we to conclude that the court's remand order did not instruct the Department to conduct another hearing, we would still find that plaintiff's right to due process was violated when the Director revoked his insurance producer's license without a hearing on remand.

¶ 26　　In a proceeding where a person's right or interest in life, liberty or property is affected, due process requires that that person be served with notice and an opportunity to defend that

interest in a fair and impartial hearing. *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d 303, 305 (2003). "[D]ue process of law extends to every governmental proceeding that may interfere with personal or property rights or interests, whether that process is executive, legislative, judicial, or administrative." *Abandonment of Wells*, 343 Ill. App. 3d at 306. "An administrative hearing must be conducted in accordance with the due process requirements under the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution." *Abandonment of Wells*, 343 Ill. App. 3d at 306.

¶ 27　　In Illinois, due process protection extends to professional licenses. *Petersen v. Plan Comm'n*, 302 Ill. App. 3d 461, 467 (1998). An administrative proceeding satisfies due process when the involved party has the " 'opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute.' " *General Service Employees Union, Local 73 v. Illinois Educational Labor Relations Board*, 285 Ill. App. 3d 507, 515 (1996) (quoting *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 702 (1994)). A due process analysis requires reviewing courts to consider three elements: (1) the magnitude of the private interest affected; (2) the degree of risk of an unjust deprivation of such interest through the procedures used, and the estimated value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the burdens of conducting additional or alternative procedural actions. *Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

¶ 28　　Here, the procedures employed by the Department on remand failed to satisfy the requirements of due process. Although administrative agencies are not required to conduct an additional hearing each time they revisit a decision on remand, in this case plaintiff was entitled to a hearing as a matter of due process. First, neither party disputes that the magnitude of the private interest affected is significant as it constitutes plaintiff's livelihood. Second, contrary to the Department's argument, we believe that there is a high degree of risk that, given the "cloudy" evidence of plaintiff's violation of section 500-95, he was unjustly deprived of his interest by the procedures employed on remand. As mentioned, we do not see how in the absence of another hearing the Department was able to clarify the evidence. Additionally, there were no substitute procedural safeguards employed by the Department in lieu of a hearing to ensure that plaintiff was not unjustly deprived of his interest. Finally, we cannot say that the burden of conducting another hearing in this case would have been particularly significant given the nature of the case and the limited number of witnesses presented at the initial hearing.

¶ 29　　In reaching this conclusion, we are unpersuaded by the Department's argument that even if plaintiff were entitled to an opportunity to reargue his case on remand, his rehearing motion cured the defect. A motion for rehearing does not amount to an " 'opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute.' " *General Service Employees Union*, 285 Ill. App. 3d at 515 (quoting *Obasi*, 266 Ill. App. 3d at 702).

¶ 30　　Finally, we note that the court's remand order instructed the Director to reevaluate the penalty imposed in light of the fact that the only violation plaintiff may have committed is failure to timely report his conviction. Even if, after the record is clarified, plaintiff is found

to have violated that section, we find revocation of his license overly harsh.

¶ 31    The Director's disciplinary decision will amount to an abuse of discretion if it is either: " '(1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute.' " *Reddy v. Department of Professional Regulation*, 336 Ill. App. 3d 350, 354 (2002) (quoting *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 763 (1999)). As mentioned, we find the penalty of revocation overly harsh under the circumstances presented in this case and need not consider whether the penalty imposed was unrelated to the purpose of the statute. In reaching this conclusion, we note that neither the parties nor our research has provided cases with facts similar to those here, *i.e.*, involving the revocation of an insurance producer's license. As a result, we look for guidance in cases involving the revocation of other professional licenses.

¶ 32    For example, in *Kafin v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 111875, ¶¶ 40-50, we found the revocation of the plaintiff's medical license was overly harsh despite the fact that the plaintiff, a 58-year-old doctor, entered into a personal and sexual relationship with his patient, who was then 20 years old, gave her samples of prescription medications, a fake identification card, alcohol and marijuana, and took her on his medical rounds under the pretenses that she was his intern. In *Reddy*, 336 Ill. App. 3d at 352-55, the Fourth District of this court affirmed the six-month suspension of the plaintiff's medical license where the evidence showed the plaintiff suffered from a mental illness, professed his love for his patient during a psychiatric treatment session, moved her into the home he shared with his wife and children, divorced his wife and proceeded to marry his patient. In *Knop v. Department of Registration & Education*, 96 Ill. App. 3d 1067 (1981), the Fifth District of this court found that the revocation of the respondent's pharmacist's license as a pharmacy apprentice and the 10-day suspension of the co-respondent's license as a registered pharmacist did not amount to an abuse of discretion by the State Board of Pharmacy where the respondents mistakenly filled a prescription with a strength five times more potent than that prescribed by the physician to the seven-year-old patient. Although the above cases involve medical licenses, the conduct in these cases is far more egregious than plaintiff's alleged failure to timely notify the Director of his felony conviction and yet did not warrant a penalty as harsh as revocation.

¶ 33    Also instructive is *In re Scott*, 98 Ill. 2d 9 (1983), cited by plaintiff. In *Scott*, the attorney respondent was suspended from the practice of law for three years following his conviction for filing a false federal income tax return for the year 1972. *Scott*, 98 Ill. 2d at 12. Respondent appealed and our supreme court found that although respondent's conviction warranted a suspension, that conclusion had to be balanced against the mitigating evidence presented, *i.e.*, respondent was elected Attorney General of Illinois four times; he served one term as State Treasurer; and 11 witnesses testified on respondent's behalf and to his moral qualifications that made him fit to practice law. *Scott*, 98 Ill. 2d at 18-19. After conducting this balancing, the court concluded that "[t]he mitigating evidence clearly demonstrates that the purpose of the disciplinary process in this case is fulfilled without a suspension longer than that already served." *Scott*, 98 Ill. 2d at 19.

¶ 34    Accordingly, even if on remand the Director finds plaintiff failed to timely report his

felony conviction and thus violated section 500-95 of the Code, we direct that a penalty less than revocation be imposed. In coming to the conclusion that revocation is overly harsh, we take into account several mitigating factors. First, although the record is cloudy as to notification, it is undisputed that within 30 days of his conviction, plaintiff signed a license renewal application that disclosed his conviction and then tendered it to his attorney for filing with the Department. It is also undisputed that notification was then made on January 16, 2008, less than 60 days after his conviction. Second, the criminal conduct here, the filing of a false tax return unrelated to his business activities, ended in 2000, 12 years ago. Lastly, plaintiff presented testimony that his business has had a positive impact on the Hispanic community in the Chicagoland area.

¶ 35      For the reasons stated, we reverse the revocation of plaintiff's Illinois insurance producer's license and remand with instructions for the Department to conduct an additional hearing and, in the event plaintiff is again found to be in violation of the Code, impose a sanction less than revocation.

¶ 36      Reversed and remanded.